Opinion of the Court.

## Merchants' Dispatch Transportation Company

*v.*

## Edward Hallock.

1. COMMON CARRIERS—*when their liability as carriers terminates.* It is the settled doctrine of this court that the liability of a railroad company as a common carrier terminates, when the consignee or some one for him is not present on the arrival of the goods to receive them, with the delivery of the goods in a safe warehouse, and notice to the consignee of their arrival is not required to be given.

2. The same rule applies to other corporations using railroads as a means of conveyance, where, by their usage, they merely undertake to deliver the goods at their depots.

3. And where it is the usage of such a company, upon the request of the consignee, to deliver goods upon their arrival to teamsters not in the employ of the company, and who deliver them to the consignee at his expense, collecting their charges from him, in the absence of such a request the company terminates its liability as a carrier by the storage of the goods in their warehouse provided for the purpose, if the same is safe and suitable. Such a company differs from an express company, in that the latter have teams and vehicles by which they receive and deliver goods, such being their established usage.

APPEAL from the Superior Court of Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

Messrs. SMALL & INGALLS, for the appellant.

Messrs. HOWE & RUSSELL, and Messrs. HITCHCOCK, DUPEE & EVARTS, for the appellee.

Mr. JUSTICE BREESE delivered the opinion of the Court:

This was an action of assumpsit, in the Superior Court of Cook county, against appellant as a common carrier. The cause was tried by the judge without a jury, and damages assessed to the full amount of the plaintiff's claim, and for which judgment was rendered.

To reverse this judgment the defendants appeal.

It appears from the bill of exceptions that appellants own a line of freight cars plying between the Atlantic seaboard and the west, carrying freight at the same tariff of charges the railroad companies do, whose tracks they use. Their only business is that of freighters. They have an office in the city of New York and one in Chicago.

On the second day of October, 1871, they received, at the city of New York, a lot of household goods noted on the bill of lading as "old furniture," and classed as third rate, the tariff on that class being thirty cents per one hundred pounds. The goods arrived at appellants' depot in Chicago, by the Michigan Central Railroad, at 7:50 o'clock on the evening of October 7th, and on the following morning, which was Sunday, they were taken from the cars and deposited in appellants' warehouse, admitted to be safe and suitable.

On the night of that day, or very early in the morning of the ninth, the goods were destroyed by that memorable fire which swept over the city.

It is agreed between the parties that this court shall take judicial notice of that fire (as occurring on the eighth and ninth days of October, and the character of it;) and further, it is agreed that the goods in question were destroyed by that fire, and without the actual fault or negligence of appellants, while in their warehouse.

The bill of lading executed by appellants and delivered to and accepted by the son of appellee, who attended to the shipment in New York, contained this clause: " To be forwarded in like good order (dangers of navigation, collisions and fire, and loss occasioned by mob, riot, insurrection or rebellion, and all dangers incident to railroad transportation excepted,) to Chicago depot only, he or they paying freight and charges for the same as below."

It is agreed appellee's son, who took the bill of lading, had no knowledge of its contents; but it is in evidence it was mailed to appellee at Chicago, and received by him in due course of mail before the goods arrived.

286      M. D. T. Co. *v.* HALLOCK.      [Sept. T.,

Opinion of the Court.

Appellee stated, on his examination as a witness, in a very equivocating manner, that he did not read it, and could not state what its contents were. His whole testimony, as it appears in the record, has not made a favorable impression on us, though the court below seem to have placed full confidence in it. But that is not material. The question is, when did ·the carriers' liability terminate?

Whatever other courts may have decided on this question, it is the settled doctrine of this court that the liability of a common carrier terminates with the delivery of the goods in a safe warehouse, and notice of their arrival is not required to be given to the consignee.

Carriers by land, before the introduction of railroad cars as vehicles of conveyance, the rule was, as to them, that they must deliver in person to the consignee. From this duty nothing save the act of God or the public enemy could discharge them.

Since the introduction of the railroad system, a different rule has been adopted. The reason for it is briefly expressed in the case of *Vincent* v. *Ch. and Alton R. R. Co.* 49 Ill. 33. At page 38, this court said, the rule of the common law requiring common carriers by land to deliver to the consignee, has been so far relaxed in regard to railways, from necessity, as in most cases to substitute in place of personal delivery, a delivery at the warehouses or depots provided by the company for the storage of goods. It has repeatedly been held by this court that a railway company may discharge itself of its liability as a common carrier by safely depositing goods in its warehouse and there holding them under the responsibilities of a warehouseman until demanded by the consignee. These decisions proceed upon the ground that a railway has no means of delivery beyond its own lines.

The cases decided by this court, to which reference was made for the principle, are: *Ill. Cent. R. R. Co.* v. *Alexander et al.* 20 Ill. 23; *Porter* v. *The Chi. and R. I. R. R. Co.* ib. 407.

These cases were decided upon an examination of many author-
ities, and the rule declared, that where articles to be trans-
ported have arrived at their destination, and have been re-
moved and stored in a warehouse owned by the carrier, or by
some other party, the duty of the carrier is terminated. If
the goods are stored in a building owned by the carrier, the
liability changes to that of a warehouseman.

At the same term *Davis et al.* v. *Michigan Southern and N.
Ind. R. R. Co.* ib. 412, was decided, in which the same rule
was announced. And in *Richards et al.* against the same com-
pany, ib. 404, it was reiterated in this language: "So soon
as the goods arrive at their destination, or at the terminus of
their road, and they are unloaded and placed safely and se-
curely in the defendant's warehouse, the responsibility of com-
mon carriers ceases, and that of warehouseman attaches." The
same ruling is repeated in *Ch. and A. R. R. Co.* v. *Scott,* 42 ib.
132.

These cases also hold that it is not necessary the railroad
managers or employees should give notice of the arrival of the
goods to the owner or consignee.

It is, however, claimed by appellee that the company agreed
to give him notice of the arrival of the goods.

It is certain there was no such agreement or promise made
at the time the goods were delivered to the company for trans-
portation. Appellee testified he called at the office of the
company in Chicago to inquire about the goods then in tran-
sit, and directed when they arrived they should be delivered
to him, and he says some one in the office told him they would
do it. It was not Mr. Howe, the superintendent, nor is there
any proof the promise was made by any person so connected
with the business of the company, whose duty and right it
would be to make such a promise. It was no part of the
original undertaking of appellants.

But it is claimed by appellee that appellants are not a rail-
road company, and the rule referred to can have no applica-
tion to them—their contract being substantially that of an

express company. It is said the only respect in which it differs from such company is, that the express company undertakes to deliver without orders, while appellants' company undertakes to give notice and deliver on orders.

We look into the record in vain to find proof of such an undertaking on the part of appellants.

The superintendent, Howe, testified, if it was the wish of the consignee, they frequently, when they received goods, delivered them to the place of business, or the warehouse of the consignee, should he so direct; when the consignee requests them, they so deliver at his expense, and make no charge for that as a transportation company; it is done by the owners of the teams; they collect from the consignee; we deliver to teams, but not by teams.

We understand by this, that, according to the established usage of appellants' business, they deliver only at their depot, unless specially requested otherwise. There is, as we have said, no promise to give notice, and no request to deliver by teams, elsewhere than at the depot of appellants.

We come now to the bill of lading. It matters not whether its terms were or not assented to by appellee, as they include no more and no less than their liability at common law, as applicable to conveyance by railroads, to carry and deliver at their usual place of delivery. There is nothing in it limiting this liability. Under the authority of the cases cited, we must hold this company discharged its whole duty by transporting these goods safely to their depot in Chicago; that they were not bound to give notice of their arrival to the consignee; that he not being present to receive the goods at the time of their arrival, nor any person for him, and no request shown to deliver them to teams, they had the right to store them in their warehouse, admitted to be safe, at which time their liability as carriers ceased, and that of warehousemen attached.

It is urged by appellee that the consignee should have an opportunity, before loss, to receive his goods. To this it may

be answered, he was advised of the time of their probable arrival, and should have been at the depot to receive them. The opportunity to receive the goods was as favorable to appellee as to appellants to give notice, was it their duty to notify the consignee. They arrived long after business hours, near eight o'clock of an October night, at a time when teams and drays and other usual modes of conveyance are at rest. The following day was Sunday—not a business day, and notice could not be given. It was necessary to use the car in which the goods were conveyed, on that day, and in the morning it was unloaded, the car departing empty soon after nine o'clock.

The views expressed by Shaw, Ch. J., in *Norway Plains Co.* v. *Boston and Maine Railway Co.* 1 Gray, 263, cover the whole ground of this controversy, and accord with those we have expressed. He said, "the duty assumed by the railroad is, that they will carry the goods safely to the place of destination, and there discharge them on the platform, and then and there deliver them to the consignee, or the party entitled to receive them, if he is then and there ready to take them forthwith; or if the consignee is not then ready to take them, then to place them securely and keep them safely a reasonable time, ready to be delivered when called for. This, it appears to us, is the spirit and legal effect of the public duty of the carrier and of the contract between the parties when not altered or modified by a special agreement. This view of the law applicable to railroad companies as common carriers of merchandise, affords a plain, precise and practical rule of duty, of easy application, well adapted to the security of all persons interested; it determines they are responsible as common carriers until the goods are removed from the cars and placed on the platform; and if, on account of their arrival in the night, or at any other time when by the usage or course of business the doors of the merchandise depot or warehouse are closed, or for any other cause they can not then be delivered, or if for any reason the consignee is not ready then to receive them, it is the duty of the company to store them safely under the charge

19—64TH ILL.

of competent and careful servants, ready to be delivered, and actually deliver them when duly called for by parties authorized and entitled to receive them, and for the performance of these duties, after the goods are delivered from the cars, the company are liable as warehousemen or keepers of goods for him."

Upon the point of notice he proceeds to say : "It was argued in the present case, that the railroad company are responsible as common carriers of goods until they have given notice to the consignees of the arrival of the goods. The court are strongly inclined to the opinion that, in regard to the transportation of goods by railroads, as the business is generally conducted in this country, the rule does not apply. The immediate and safe storage of goods, on their arrival, in warehouses provided by the railroad companies, and without additional expense, seems to be a substitute better adapted to the convenience of both parties." In the case before us, as we have shown, notice could not have been given.

In conclusion, we say with the court in *Thomas* v. *Boston and Prov. R. Way,* 10 Metc. (Mass.) 472, when suitable warehouses are provided, as in this case, and the goods, which are not called for on their arrival at the place of destination, are unloaded and stored safely in such warehouses, the duty of the proprietors as common carriers is, in our judgment, terminated.

We see nothing in this case to take it out of the rule so long established by this court.

There is no essential difference between this company and a railroad company, and it must be subject to no other or greater liabilities. It differs from an express company in this, that the latter have teams and vehicles by which they receive and deliver goods, and such is the established usage. Their compensation is found in high rates of transportation, whilst appellants receive only the rates established by railroads on their ordinary classified freights.

For the reasons given, the judgment of the court below must be reversed.          *Judgment reversed.*