## American Merchants' Union Express Co.

### *v.*

## Isaac M. Wolf *et al.*

1. Express companies—*their duties as common carriers.* An express company is not only required, as a common carrier, to transport the goods to the place of destination, but the further duty is enjoined upon them to deliver the goods to the consignee at his residence or place of business.

2. And where directions are given to that effect by the consignor, it becomes the further duty of an express company to collect the price for which the goods were sold by the consignor to the consignee, and return the money to the consignor.

3. Where goods transported by an express company are by it tendered to the consignee, and he fails to receive and pay for them, it is the duty of such express company to notify the consignor of the goods, and when this is done, the company is relieved of its responsibility as a common carrier, and holds the goods subject to the order of the consignor, but not before.

4. Same—*how may be discharged of responsibility as common carriers.* An express company can discharge itself of responsibility as a common carrier in no other way than by an actual delivery of the goods to the proper person, at his residence or place of business, except by proving that it has been excused from doing so, or prevented by the act of God or the public enemy.

5. Evidence—*C. O. D.* The fact that goods transported by an express company were marked C. O. D. would not, of itself, unexplained, be sufficient evidence of an agreement that the company was to collect the price for which the goods were sold, but when, in addition to such fact, the plaintiff testified that the goods were to be shipped, and the amount marked on them collected, it ought to be sufficient, especially upon a point upon which there was no controversy before the jury.

Appeal from the Circuit Court of Cook county; the Hon. Henry Booth, Judge, presiding.

Messrs. Small & Moore, for the appellant.

Mr. Justice Craig delivered the opinion of the Court:

This was an action, brought by Wolf and Perlinsky, appellees, against the American Merchants' Union Express Com-

pany, to recover the value of a quantity of goods delivered to the company, at Chicago, October 8, 1872, consigned to W. A. Seib, Atchison, Kansas, and marked "C. O. D. $65.70."

A trial of the cause was had before a jury, in the circuit court of Cook county, which resulted in a verdict in favor of the plaintiffs for $48.68. The court overruled a motion for a new trial, and rendered judgment upon the verdict, to reverse which the company brings the record here by appeal.

It appears, from the evidence, that the goods consisted of uniforms, etc., ordered to be used in the then pending political campaign. They were received by the agent of the company at Atchison, on the 10th or 11th day of October, and on the same day the goods were tendered to the consignee, who refused to accept them, "saying he had not the money to take them, but would take them in a few days."

About one week after this, the agent had another interview with the consignee, in which he was told the goods had been ordered for the Greeley club in Atchison, and that the club had not raised the money yet, but the consignee thought he would take the goods in a few days.

When the campaign was nearly over, another interview took place, when the agent was informed the goods would not be taken.

No notice, however, was given by the agent at Atchison to the office at Chicago, where the goods had been shipped, or to the consignor, of the failure of the consignee to accept and pay for the goods, until the 4th day of November, when the agent wrote to the office in Chicago as follows: "On the 8th October, 1872, you billed to this office a C. O. D $65.70, from Wolf and Perlinsky, No. 380 Milwaukee Avenue, on W. A. Seib, Atchison. This C. O. D. remains in our office unpaid. The parties are aware of its being here and waiting payment of the bill. What shall we do with it? Mr. Seib has not been able to raise money from the Lib. club to take the goods. To-morrow being election day, goods will not be needed. Shall I return them?"

This notice was handed to appellees on the 15th day of November, and it was the first intimation they had that the goods had not been received and paid for by the consignee.

The first ground relied upon by appellant's counsel to secure a reversal of the judgment, is, that the court refused to give the following instruction:

"If the jury believe, from the evidence, that the defendant received from the plaintiffs the goods in controversy in this suit, on or about the 9th day of October, A. D. 1872, and that the defendant forwarded said goods to W. A. Seib, and offered to deliver the same to him, within a reasonable time thereafter, and that said Seib refused to receive the same, and that the defendant thereupon stored said goods in its warehouse, and holds the same subject to the order of the plaintiffs, then the jury are instructed to return a verdict for the defendant."

Where railroad companies receive, as common carriers, merchandise for transportation, the rule is well settled that, when the goods arrive at their destination, if the consignee is not ready to receive them, it is the right of the company to store the goods in a safe warehouse, there to be held for the consignee when he may call for them, and that, ordinarily, no notice is required to be given of the arrival of the goods, to consignee or consignor. *Merchants' Dispatch Transportation Co.* v. *Hallock*, 64 Ill. 284.

This doctrine, however, has no application to the duties and obligations of an express company. An express company is not only required, as a common carrier, to transport the goods to the place of destination, but the further duty is enjoined upon them to deliver the goods to the consignee, at his residence or place of business. *Baldwin* v. *The American Express Co.* 23 Ill. 197.

It frequently occurs, as it did in the case under consideration, that an express company has still another duty to perform, and that is, to collect the price for which the goods were

sold by the consignor to the consignee, and return the money to the consignor.

An express company can not relieve itself of responsibility for goods received for transportation, by proof that it carried the goods to the depot or place where the consignee may reside, and there placed them in a warehouse, ready for the consignee. As was said by this court, in *Baldwin* v. *The American Express Co. supra,* "it is the settled doctrine of England and of this country, that there must be an actual delivery to the proper person, at his residence or place of business, and in no other way can he discharge himself of his responsibility as a common carrier, except by proving that he has performed such engagement, or has been excused from the performance of it, or been prevented by the act of God or a public enemy."

In this case, the goods were not delivered to the consignee, nor was the company prevented by the act of God or a public enemy.

Has the company been excused from a delivery of the goods, or, in other words, after the goods were offered to the consignee, and he declined to receive and pay for them, can the company relieve itself of responsibility by storing the goods and holding them in store until they become worthless, before any notice is given to the consignor?

The agent at Atchison knew the character of the goods, and must have known that, after the election in the early part of November, they would be worthless; but, notwithstanding this fact, he held these goods from the 11th day of October until the 4th day of November, before he notified the office in Chicago that the consignee declined to receive them.

The goods were thus held by the agent for a period of 24 days after he had notice that they would not be received, and the consignor received no notice whatever in regard to the fate of the goods until the middle of November.

We are of opinion that the appellant did not discharge the duty the law cast upon it as a common carrier of goods; that, when the goods were tendered to the consignee, and he failed to receive and pay for them, it was the duty of the agent at Atchison to give immediate notice to the office in Chicago, and that the agent in the office at Chicago was required, upon receipt of such notice, to at once notify the consignor of the goods. Had this been done, the company would have been relieved of responsibility, and held the goods subject to the order of the consignor.

If we are correct in these views, it follows that the instruction was properly refused, for the reason that it ignored entirely the question of notice to the consignor.

While it may be true that it is the duty of the company to hold the goods a reasonable time, if, when a delivery is offered, the consignee is not ready at the time to receive them, yet this in no manner conflicts with the other obligation, which required notice to be given to the consignor.

It is also insisted that an instruction given for appellees was erroneous, as it assumed there was no agreement that the company was to collect the price for which the goods were sold, when it is claimed the proof does not show such was the fact.

The goods were marked "C. O. D." This, of itself, unexplained, would not be sufficient, but, in addition to this fact, the plaintiff testified the goods were to be shipped to Atchison, Kansas, and collect $65.70. This evidence, in connection with the marking on the package, ought to be sufficient, especially upon a point upon which there was no controversy before the jury.

It is next urged that the circuit court erred in not confining appellees' evidence, to establish the amount of damages, to the value of the goods at the place of destination, at the time the goods should have been delivered.

It is a sufficient answer to the position of appellant, that the objection now urged was not made in the circuit court, nor

does the bill of exceptions contained in the record show that any decision was made by the circuit court upon the question, and, in the absence of a decision, we are aware of no practice under which error can be assigned.

If appellees offered evidence which was not admissible, appellant should have objected to its introduction, pointed out the objection, obtained the decision of the court upon the point raised, and excepted to the decision. Then, upon appeal, the question would properly arise, whether there was error in the decision of the court. This, however, was not done, and the question attempted to be made does not arise upon this record.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*