## The Indianapolis and St. Louis Railroad Co.

*v.*

## Herndon & Vanduzen.

1. Trover—*lies against carrier or warehouseman.*  If goods are shipped by the owner by rail to his own address, and the agent of the railway company delivers the same to an unauthorized person, who advances the freight only, trover will lie against the carrier, although he may afterwards make arrangements whereby to get the goods.

2. Carrier—*liability not dependent on pre-payment of freight.*  A carrier may exact payment of charges for carrying goods in advance, or may transport them trusting to its lien and the mode of its enforcement; and if it adopts the latter course, it is bound to the same measure of duty in carrying, storing and holding for the consignee, as if the charges had been prepaid.

3. Same—*lien, how enforced.*  When parties ship fruit trees to a point to their own address, as consignees, the carrier, neither at common law nor by the statute, is authorized to place the trees in the hands of a stranger, with directions to him to sell enough of them to pay the charges of transportation, and if he does he will be liable in trover to the owners.

4. Same—*not excused from duty by owner's negligence.*  The negligence of the consignee of goods to call for the same and pay freight within a reasonable time after they reach their destination, will not justify the carrier

in delivering the same to an unauthorized person, or to a person in violation of the written directions of the owner.

5. Negligence—*to prohibit a recovery.* The negligence of a plaintiff, which will prevent a recovery for an injury sustained by reason of the defendant's negligence, must be such as contributes to the injury complained of—in other words, it must be such that, by the usual course of events, the injury would result, unless without the intervention of other agencies.

Appeal from the Circuit Court of Edgar county; the Hon. Oliver L. Davis, Judge, presiding.

Herndon & Vanduzen brought trover against the Indianapolis and St. Louis Railroad Company, in the county court of Edgar county, for the value of certain fruit trees. Judgment was rendered in that court for the plaintiff in the action, for $174.55. The cause was appealed to the circuit court of Edgar county, where judgment was again rendered for the plaintiff for the same amount, from which this appeal is prosecuted.

The facts, as proved, are, briefly, as follows: On the 17th of October, 1872, Herndon & Vanduzen shipped from Geneva, New York, three boxes of fruit trees, to their own address, at Paris, Illinois, the last carrier in the line being the Indianapolis and St. Louis Railroad Company. The trees had been ordered by L. T. Fisher, of Paris, Illinois, and a bill of sale for the same to him was made out by Herndon & Vanduzen, and inclosed in a letter addressed by them to "The Express Agent at Paris," in which he was informed of their shipment of the trees to their address at Paris; that the trees were sold to Fisher, but, as they had no acquaintance with Fisher, that they sent the bill to the agent of the express company for collection; that he might allow Fisher to open and inspect the trees before paying for them, and requesting that the cash for the trees be remitted by express.

The agent of the Indianapolis and St. Louis Railroad Company, at Paris, received the trees, and, after keeping them some little time, and no one calling for them, and the weather becoming severely cold, so that he thought them in danger of freezing, as he says, he delivered them to Fisher, telling him

to take care of them, and sell enough to pay the freight. Fisher took them and "heled" them in, and shortly afterwards paid the freight. Whether he sold any of them or not does not appear. After Fisher received the trees, he wrote to Herndon & Vanduzen, notifying them of the fact, and that the trees were satisfactory. This letter was dated November the 18th, 1872. On the 15th of December, 1872, Herndon & Vanduzen wrote to the freight agent at Paris, sending him the bill for the trees, and calling his attention to the fact that they had shipped the trees, and that he had, contrary to directions, delivered them to other parties, and requesting him to forward the money in payment for the bill, or, in default, they would bring suit against the railroad company. In answer to this, the agent wrote them that he yet held the trees subject to their order.

Sometime in the fall or early part of the winter of 1872, Herndon & Vanduzen sent their claim, for collection, to Mr. George Dole, an attorney at Paris. He, on receipt of it, went to the freight agent of the Indianapolis and St. Louis Railroad Company, who informed him that he had received the trees and turned them over to Fisher, who had paid part of the freight on them, and requested that he would see Fisher and try to collect the amount from him. On this request, Dole saw Fisher, who said he had the trees, and offered to turn out some accounts on them, but nothing was collected from him.

It appears that Fisher took good care of the trees, but it does not appear that he offered to deliver them to the attorney, or that any demand was made on him for that purpose.

The court, at the request of the plaintiffs, instructed the jury as follows:

"The court instructs the jury, that if they believe, from the evidence, that the plaintiffs shipped the fruit trees in controversy from Geneva, N. Y., to Paris, Illinois, in October, 1872, consigned to Herndon & Vanduzen; that said trees afterwards arrived in Paris, and were in the possession of the defendant, and were delivered by the defendant to a third person without

the order of the plaintiffs, then the defendant is liable to pay to plaintiffs the value of the trees, and the jury should find accordingly."

The defendant asked the court to instruct the jury as follows, which the court refused:

" Carriers by railroad are neither bound to deliver the goods carried to the consignees personally, nor to give notice of their arrival, to discharge their liability as carriers; but if the consignee is not present to receive the goods on their arrival, the carrier can store them safely to await the demand of the consignee; and when the goods are thus stored, the duty of the railroad as a common carrier terminates, and that of a warehouseman begins.

" If the jury believe, from the evidence, that the trees for which this suit was brought were sold by the plaintiffs to some other person, and that the person to whom they were sold received them from the defendant, then the defendant is not liable for the value of the trees."

Exception was taken, in apt time, to the giving and refusing of the instructions. Motion for a new trial was made, and overruled by the court, to which there was also exception taken.

Mr. R. N. Bishop, and Mr. C. V. Jaquith, for the appellant.

Mr. Joseph E. Dyas, for the appellees.

Mr. Justice Scholfield delivered the opinion of the Court:

It was held in *Illinois Central Railroad Co.* v. *Parks*, 54 Ill. 294, that an action of trover lies against a carrier who, by mistake, delivers goods to a wrong person, and the same rule applies to warehousemen. " Warehousemen," says Story, in his work on Bailments, § 450, " are not only responsible for losses which arise by their negligence, but also for losses occasioned by the innocent mistake of themselves, and of their

servants, in making a delivery of the goods to a person not entitled to them.   For it is a part of their duty to retain goods until they are demanded by the true owner; and if, by mistake, they deliver the goods to a wrong person, they will be responsible for the loss, as upon a wrongful conversion."

Whether, therefore, the defendant's duty as carrier had ended and its duty as warehousman had been commenced, before the delivery of the trees to Fisher, is an unimportant inquiry, under the evidence, since it is not denied that at that time it was holding them in the one capacity or the other.   Yet, inasmuch as we think it clear, under the rule recognized by previous decisions of this court, many of which will be found referred to in *Merchants' Dispatch Transportation Co.* v. *Hallock*, 64 Ill. 284, where the question is discussed at some length, that it was then holding them as warehouseman, the case will be considered in that view.

The boxes containing the trees were plainly directed to Herndon & Vanduzen, and there is no pretense of authority in defendant's agent to deliver them to Fisher.   It is true, the trees had been ordered by Fisher, and they were shipped to be delivered to him, but the delivery was not to be made until after he paid for them.   We do not consider it important what steps were taken to notify Fisher of the arrival of the trees, or whether plaintiff had taken due care to have an agent at the defendant's depot at Paris, to receive them and pay for the freight upon their arrival, because these questions in no manner affect the defendant's duty or the measure of its liability. It was optional with it to refuse to receive the trees to carry, until its charges were paid, or to carry them trusting to the lien, and the mode of its enforcement, provided by law.   It adopted the latter course. and, in doing so, is bound to the same measure of duty in carrying, storing and holding for the consignee, that it would have been had its charges been paid in advance—having the right, however, to enforce payment of its charges from the property in the mode provided by law. Without undertaking the gratuitous task of discussing what would have been the most effective and appropriate remedy

for the defendant to have pursued to collect its charges, under
the circumstances, it is sufficient to say, neither by the com-
mon law nor by statute was it authorized to place the trees in
Fisher's hands with directions to him to sell enough of them
to pay these charges.    It was its plain duty to store the trees,
when they were not called for on their arrival, in its warehouse,
and there to keep them until called for by the consignees or
some one authorized by them to receive them, or until they
were taken and sold, in conformity with law, in satisfaction
of defendant's claim for charges.

That Fisher's possession was not for the defendant, we think,
is clear.    The trees were not delivered to him by defendant's
agent to keep as a bailee or custodian for defendant, because
he was directed to sell enough of them to pay the freight due
for their carriage, and he did pay and the agent received from
him such freight.    When he wrote to the plaintiffs, acknowledg-
ing the receipt of the trees, it was not as custodian or bailee
for defendant, but as purchaser.    When defendant's agent re-
quested attorney Dole to see him, it was not as custodian or
bailee, but as one under some obligation to pay for the trees.
The letter of defendant's agent to the plaintiffs, informing
them that he held the trees then, could not have been true.
Fisher held them.    Whether he was able to get them back
from Fisher, is a very different question, and one not im-
portant to the merits of the case.    As warehouseman or car-
rier, the defendant does not answer the demands of the law,
when it has improperly disposed of the property in its custody,
by simply placing itself in a condition to repossess it.    There is
nothing to show that plaintiffs acquiesced in the delivery
to Fisher.    They had, it is true, written to the express
agent, at Paris, making him their agent for the delivery of
the trees, upon the payment of the purchase money by Fisher.
It does not, however, appear that any one ever received this
letter—certainly no one acted on it, and there is no claim
made that the delivery was by the authority thus attempted
to be conferred.    When the plaintiffs learned that Fisher
had the trees, they notified the agent that the delivery

was contrary to instructions, and that they should hold the defendant responsible for their value; and the mere act of Dole in calling on Fisher to see if he would pay, done, as it was, at the instance of the defendant's agent, we can not regard as in anywise compromising the plaintiffs.

It may be the plaintiffs were negligent, as is contended by counsel for the defendant, in not calling for the trees within a reasonable time, either by themselves or their agents. But how is such negligence connected with the negligence of the defendant? The defendant's duty, as we have before attempted to show, was plain, whether plaintiffs did or did not call for the trees. The most that defendant could be justified in doing, in the event of the plaintiffs' negligence in this respect, was to take the steps pointed out by the law for the enforcement of its rights.

Negligence of the plaintiffs, which will prohibit a recovery for an injury sustained by reason of defendant's negligence, must be such as contributes to the injury complained of; that is, it "must be such, that by the usual course of events, it would result, unless independent, disturbing moral agencies intervene, in the particular injury." Wharton on Negligence, § 324. Whatever negligence plaintiffs may have been guilty of, therefore, in not calling for the trees within a reasonable time, is an element that can have no proper influence in the present case, for no one pretends that its necessary tendency was to induce the defendant's agent to take the law into his own hands, and dispose of the trees to suit his pleasure.

The ruling of the circuit court, in the giving and refusing of instructions, was in harmony with the views we have expressed, and the evidence, in our opinion, sustains the verdict.

The judgment is affirmed.

*Judgment affirmed.*