NORFOLK SOUTHERN RAILROAD COMPANY v. NEW BERN IRON
WORKS AND SUPPLY COMPANY.

(Filed 11 October, 1916.)

**1. Carriers of Goods—Railroads—Shipment Refused—Demurrage.**

A carrier of goods, under the requirements of the Interstate Commerce
Commission, must collect freight charges according to established rates,
and exhaust all legal remedies to collect such charges, and incidental
undercharges, in order to prevent undue discrimination; and where a
consignee refuses to pay a charge for the shipment accordingly rendered,
and to accept the goods, he is responsible for such freight charges at the
suit of the carrier, and for proper demurrage and storage charges reason-
ably incident and attributable to the defendant's wrong.

**2. Same—Sales of Goods.**

Where a consignee of goods wrongfully refuses, at the time of notifica-
tion of their arrival, to receive such goods on account of excessive charge
made for their transportation, *semble*, no demurrage charges are col-
lectible by the carrier, but only reasonable storage charges, until, in the
exercise of its rights under the law, it could properly dispose of the
goods and thereby be relieved of further charge concerning them.

**3. Same—Minimizing Damages—Interstate Commerce—State Statutes.**

A carrier at common law was required to resort to the courts to enforce
its lien for freight charges, and our statutes, Revisal, secs. 2637, 2638,
give this right to the carrier, when the goods are nonperishable, after
six months; and being a part and in furtherance of the remedy afforded
by the law in such cases, requiring an injured party to do what busi-
ness prudence requires to minimize the loss, it applies to interstate as
well as intrastate shipments, in the absence of any interfering regula-
tion by Congress or of the Interstate Commerce Commission.

**4. Same—Enforcing Liens.**

Where a consignee promptly refuses to accept a shipment on the
ground of excessive freight charges, which are shown to be correct, the
carrier is not required to assume the risk of enforcing its lien at once
by sale in order to avoid the accumulation of storage charges, for it is
required to store and properly care for the goods as warehouseman.

**5. Same—Duty of Carrier.**

Where a consignee of goods wrongfully refuses to receive them, the
carrier is not required to take the risk of immediately enforcing its
statutory lien for the freight charges, by sale *inter partes*, for it is en-
titled to proceed in an orderly way to enforce its right.

**6. Carriers of Goods—Refusal by Consignee—Duty of Carrier—Consignor—
Notification.**

*Semble*, the carrier should notify the consignor that the consignee had
refused the shipment; but the question becomes immaterial when the
freight charges for reshipment exceed the value of the goods.

**7. Courts—Jurisdiction—Amount Demanded—Good Faith—Carrier of Goods—Freight Demurrage—Charges.**

Where a carrier has brought its action in good faith against the consignee of a shipment for the freight and demurrage charges thereon in excess of $200, and is only permitted to recover in a less amount for the freight and storage charges, the jursdiction of the court is determined by the amount demanded, and that of the Superior Court obtains.

CIVIL ACTION to recover freight charges, together with an account for demurrage and storage of goods, tried before *Whedbee, J.,* and a jury, at May Term, 1916, of CRAVEN.

Plaintiff, having issued summons to Superior Court, filed its complaint and insisted on recovery of $130.50 freight charges (by mistake for $139.50), with demurrage charges, $50, and also storage charges, $219.45, since 29 September, 1909, the date when the consignee was notified in New Bern of arrival of goods and refused to receive same, claiming that the freight charge was erroneous and excessive.

His Honor held that there was no valid claim for demurrage and storage, and plaintiff, having duly excepted, the question as to defendant's liability for the freight was submitted on the following issues:

1. Did the iron beams in question require, on account of their length, two or more cars to transport them? Answer: "Yes."

2. What freight is plaintiff entitled to recover on account of transportation of the iron beams in question? Answer: $130.50, with interest."

3. Is the plaintiff entitled to recover of defendant storage and demurrage, as alleged? Answer: "Nothing."

Judgment on the verdict for plaintiff as to amount of freight charges, and plaintiff appealed, assigning for error the ruling of the court that no recovery could be had for demurrage and storage.

*Moore & Dunn and W. B. Rodman for plaintiff.*
*W. D. McIver for defendant.*

PLAINTIFF'S APPEAL.

HOKE, J. The facts in evidence tended to show that the goods in question, eight iron beams, worth $92, were shipped from Phœnixville, Pa., to New Bern, N. C., consigned to defendant, arriving at destination on 29 September, 1909; that the beams, or most of them, were 46 feet long and over that, and owing to their length, two cars, end to end, were required to properly convey them, and that, under the rules and classification of the Interstate Commerce Commission, the proper freight charge on goods of this character was $139.50; that immediately on arrival of shipment the consignees were duly notified, and declined to receive the goods or pay the freight thereon.

Under various rulings of the Interstate Commerce Commission, also in evidence, it seems that a carrier is required to collect the freight according to established rates and to exhaust all legal remedies to enforce collection of freight and incidental undercharges, this being considered necessary to prevent undue discrimination among shippers, and, on the pertinent facts, we must hold that defendant is responsible for the freight, as indicated, and for the proper demurrage and storage charges reasonably incident and attributable to defendant's wrong.

The consignee having immediately refused to take the goods, there is doubt if any demurrage charges are due as against him, but plaintiff, in our opinion, is entitled to collect reasonable storage charges until, in exercise of its rights under the law, the goods could be properly disposed of and both parties thereby relieved of further charge concerning them.

At common law a carrier was not allowed to enforce its lien for freight and storage charges by act *inter partes.* It was required to resort to the courts. Hutchison on Carriers (3 Ed.), sec. 889. Under our statute, however, Revisal, secs. 2637-38, the right of foreclosure by sale in case of nonperishable freight is given after six months, and while this is a State statute, being, as it is, a part and in furtherance of the remedy afforded by the law in such cases, we see no reason, in the absence of any interfering regulation by Congress or of the Interstate Commerce Commission, why it should not prevail both as to inter- and intrastate shipments; and, under the recognized principle that both in case of tort and breach of contract an injured party is required to do what business prudence requires to minimize the loss, *Tillinghast v. Cotton Mills,* 143 N. C., 268, and *R. R. v. Hardware Co.,* 143 N. C., 54, we think the plaintiff may not recover for the entire time which has elapsed since this shipment was refused, but is restricted to the time when he could have relieved himself of the charge by sale pursuant to statute.

It is urged for defendant that no storage charges should be allowed after defendant had in express terms refused the shipment, as plaintiff could have proceeded immediately to enforce its lien; but the position cannot be approved. The railroad company should not be required to take the risk of such a course, but is entitled to proceed in an orderly way to enforce its right, and the authorities are to the effect that a common carrier is not relieved of all responsibility by refusal of the shipper to receive the freight, but is required to store and properly care for the goods as warehouseman under established rules of law. *Bachanch & Co. v. Chester Freight Line,* 133 Pa. St., 414; *Gregg v. Ill. Cent. R. R.,* 147 Ill., 550. While there is conflicting authority on the subject, we think the better rule is that on refusal of goods by the

consignee the duty is on the carrier to notify the consignor of such refusal, *American Sugar Refining Co.,* 96 Ga., 27; *American Ex. Co. v. R. R.,* 79 Ill., 430; and the obligation is enforced in this State as to intrastate shipments by rule of our State Corporation Commission. But the question is not presented on this appeal, the right of the consignor being in no way involved, and the facts showing that the costs of reshipment is in excess of the value of the goods.

On the record the Court is of opinion that there was error in excluding from the jury the consideration of the storage charges, and plaintiff is entitled to a

New trial.

DEFENDANT'S APPEAL.

*Moore & Dunn for plaintiff.*
*W. D. McIver for defendant.*

HOKE, J.   Defendant also appealed in this case for the alleged reason that the Superior Court did not have jurisdiction of the cause, the legitimate demand of plaintiff being only for the freight of $130.50, and so recoverable only before a justice of the peace.

We have repeatedly held that the true test of jurisdiction in such cases is the amount demanded in good faith, and when this appears to be over $200, the Superior Court has jurisdiction, though the recovery may be less than that sum.   *Tillery v. Benefit Society,* 165 N. C., 262; *Brock v. Scott,* 159 N. C., 516.

On the record, we think the present case comes clearly within the principle of these decisions, and that the objection of defendant was properly overruled.

On appeal of plaintiff, New trial.

On appeal of defendant, Judgment affirmed.