DAVIS, Director General of Railroads, v. ADAMS.

(Circuit Court of Appeals, Ninth Circuit. December 3, 1923.)

No. 4028.

Carriers ⬅194—Shipper held not liable for storage charges.

Where a carrier, after the transportation has ended, stores the merchandise, not for the shipper, but by arrangement with the owner, it becomes bailee for the owner, who alone is responsible for the storage charges.

In Error to the District Court of the United States for the Second Division of the Northern District of California; George M. Bourquin, Judge.

Action at law by James G. Davis, Director General of Railroads, as Agent, against R. D. Adams. From the judgment, plaintiff brings error. Affirmed.

P. H. Johnson, of San Francisco, Cal., and James E. Gowen, of Philadelphia, Pa., for plaintiff in error.

Keyes & Erskine, of San Francisco, Cal., for defendant in error.

This case was submitted to the court below upon an agreed statement of facts. Without following the agreed statement in detail, the controlling facts are these:

The defendant sold three cars of chrome ore to E. C. Humphreys Company, and the latter, in turn, resold to the Midvale Steel & Ordnance Company, of Coatesville, Pa. The three cars were shipped by the defendant to Coatesville,

but upon arrival the Midvale Steel & Ordnance Company refused to accept delivery. Some time after the arrival of the first car, and apparently before the arrival of the other two, the carrier addressed the following letter to the defendant:

"On December 9, the Midvale Steel & Ordnance Company, Coatesville, Pa., refused to accept delivery of Erie car No. 51611, chrome ore, shipped from the Pacific Coast, purchased by them from E. C. Humphreys Company, Chicago, Ill. I accordingly communicated with E. C. Humphreys Company, requesting that they furnish disposal orders for the car, in order that further delay to same might be avoided. They advise me, however, that you were the shipper of same, and that they approached you for disposition. I trust you appreciate that delays to equipment of this kind are very serious, and must be prevented as far as possible, and I will thank you to advise by return mail what disposition can be made of this shipment."

Under date of January 8, 1919, the defendant replied as follows:

"Replying to your letter, file No. G–30, desk 1, in reference to car Erie 51611, chrome ore, shipped by us to the E. C. Humphreys Company, beg to advise that they have purchased this car from us, and we have delivered the bill of lading to them. This was an order bill of lading shipment, and we cannot at present take up the matter of disposition of the car without the bill of lading. For your information will state that we have no place we can dispose of this car outside of the destination it is at present, and would suggest that you take the matter up with the E. C. Humphreys Company."

After the receipt of this letter by the United States Railroad Administration, "the said administration took the matter up with E. C. Humphreys Company therein referred to; that on the 13th day of January, 1919, one Reinhart, representing the E. C. Humphreys Company, went to the United States Railroad Administration and asked it to unload and store the chrome ore in Erie car No. 51611, Pa. car 825285, and Pa. car. 294001; that thereupon, and at the request of E. C. Humphreys Company the said railroad unloaded the said chrome ore on the ground and on a platform on its right of way at Coatesville, Pa.; that thereafter the E. C. Humphreys Company sold the two Pennsylvania cars; that at the request of the said E. C. Humphreys Company the two Pennsylvania cars were reloaded by the railroad, and in March, 1919, were shipped to the parties designated by the E. C. Humphreys Company; that said E. C. Humphreys Company continued its efforts to sell, at a price satisfactory to said E. C. Humphreys Company, the chrome ore in Erie car No. 51611, after the disposal of the chrome ore in the two Pennsylvania cars, and requested the said railroad to keep said ore in storage pending these efforts; that the said railroad kept the said chrome ore in storage as aforesaid until the 16th day of June, 1919, when in accordance with law and pursuant to the orders of the Railroad Administration the railroad sold the said ore for charges, and received therefor the gross sum of $765."

The present action was brought to recover a balance of $1,685.97 for freight, demurrage, and storage charges, the greater part of which accrued after January 13, 1919. The court below gave judgment in favor of the plaintiff for all charges accruing prior to January 8, 1919, but denied a recovery for the balance. To review this judgment the plaintiff has sued out a writ of error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge (after stating the facts as above). The carrier is here seeking to recover from the shipper charges for storing merchandise for a period of more than six months after the transportation ended, claiming that the storage was a mere incident to the transportation. No doubt storage is or may be a mere incident to transportation, but as soon as the transportation is at an end the carrier holds the merchandise as a mere bailee or warehouseman. He may hold it in that capacity for the shipper until his charges are paid, or until the merchandise can be sold to satisfy the charges against it, or he may ar-

range with the owner of the merchandise to hold it for him and on his account. If he pursues the latter course, the carrier becomes a bailee for the owner, and the owner alone becomes responsible for the storage charges. The latter course was pursued here, for, while the exact nature of the agreement or understanding between the carrier and the owner is not set forth in the agreed statement, it does appear therefrom that the merchandise was unloaded at the request of the owner, that two of the cars were afterwards reloaded and reshipped at the like request, and that the carrier held the merchandise removed from the remaining car for a period of more than six months to enable the owner to dispose of it.

Not until it was discovered that the owner could not make such disposition did the carrier attempt to exercise the right of sale. The injustice of such a claim is apparent. If the carrier was holding the merchandise for and at the expense of the shipper, it was his duty to minimize the loss and sell the property at the earliest opportunity. Norfolk & S. R. Co. v. New Bern Iron Works & Supply Co., 172 N. C. 188, 90 S. E. 149. Instead of so doing, he held the merchandise at the instance, and for the exclusive benefit, of the owner for more than four months after a sale might have been made, and is now seeking to hold the shipper for storage charges incurred during that period.

If we are correct in our conclusion as to the relationship existing between the carrier and the owner of the merchandise after the arrangement of January 13, there seems to be no escape from the further conclusion that the shipper was not liable for demurrage and storage charges after that date. But counsel for the plaintiff in error challenges the correctness of our conclusion as to the relationship existing between the carrier and the E. C. Humphreys Company after January 13, and directs our attention to paragraph 10 of the agreed statement, wherein it is stipulated that the plaintiff in error had no knowledge or information of any kind whatever of any arrangement between the defendant in error and the E. C. Humphreys Company, or of the issuance or payment of a draft for the purchase price of the merchandise.

If paragraph 10 stood alone, there would be much force in this contention; but, where a contract or agreed statement contains conflicting provisions, the court is not compelled to accept one provision to the exclusion of all others. Here it clearly appears, from the letters of January 2 and January 8, that the carrier had both notice and knowledge of the relationship existing between the defendant in error and the E. C. Humphreys Company, and had actual notice that the latter was the owner of the merchandise. In the first letter the carrier stated that the Midvale Steel & Ordnance Company purchased the ore from the E. C. Humphreys Company, and by the second letter the carrier was informed that the E. C. Humphreys Company purchased the ore and that the bill of lading had been delivered to it. Here was explicit notice and information as to ownership, and furthermore the subsequent dealings between the parties show clearly and beyond question that the carrier was dealing with the E. C. Humphreys Company as owner, and was holding the merchandise at its request, and not for or on account of the shipper.

It has been suggested that the amount received upon the sale of the merchandise for charges should be first applied or credited on the charges accruing after January 8; but we deem it a sufficient answer to say that the carrier saw fit to apply the amount otherwise, and no such question was presented to the court below. The court below held that the defendant in error was liable for charges accruing up to and including January 8. It would seem that this was error, because the liability of the shipper was terminated not by the letter of January 8, when written at San Francisco, but by the subsequent arrangement with the owner of the property, which was not made until January 13. If we are correct in this, the charges should have been computed to the latter date; but the question was not called to the attention of the trial court, nor is it assigned as error here. We are unable to determine from the record the amount of the charges for these five days, and therefore we do not deem it necessary to modify or reverse the judgment. The case was submitted to the court below upon an agreed statement, and the ruling on the motion to strike from the answer is of no moment.

The judgment of the court below is therefore affirmed.