CLARENCE A. BLACK v. WALTER O. ASHLEY ET AL.

*Common carriers—Contract—Loss by fire—Delivery of goods to warehouseman.*

1. Acquiescence by consignees for a number of years in the delivery of freight by a common carrier to *independent* warehousemen, from whom they received it, as also notice of its arrival, and to whom they gave the necessary receipts, will relieve the carrier from liability for its safe-keeping upon its delivery to such warehousemen.

2. The following general propositions are summarized from the opinion of Mr. Justice LONG:

   *a*—At common law, a common carrier is responsible on implied contract for all loss of, or injury to, goods received for carriage, unless caused by the act of God or the public enemy or the fault of the owner.

   *b*—A common carrier may limit his liability for loss to his own line; citing *Railroad Co. v. Bank*, 20 Wis. 122; *Irwin v. Railroad Co.*, 59 N. Y. 653; or he may by special contract extend such liability so as to cover a *safe* delivery at the place of destination; citing *Railroad Co. v. Pratt*, 22 Wall. 124; *Noyes v. Railroad Co.*, 27 Vt. 110.

   *c*—In Michigan, in the absence of an express contract, or one fairly inferable from the nature of the business, the known necessities under which it is carried on, and the established usage on the subject, a common carrier cannot relieve itself from responsibility *as such* by depositing the goods in its warehouse at the end of its route; citing *Buckley v. Railway Co.*, 18 Mich. 121; *Feige v. Railroad Co.*, 62 Id. 1.

   *d*—U. S. Rev. Stat. § 4282, exempting vessel-owners from liability by reason of loss of or damage to goods by any fire happening to or on board of the vessel, is limited in its application to fires happening on ship-board

*e*—As a general rule, by usage and common custom, railroad carriers may deliver freight at their depots, freight-houses, or stations, and be relieved of the burden of actual delivery at the place of business of the consignee, and of their common-law liabilities as common carriers, by notice to the consignee, and reasonable time thereafter to remove them. Persons delivering them goods to carry are supposed, in the absence of special contract, to understand such usage or custom, and to contract with reference to it; citing *Strong v. Railroad Co.*, 15 Mich. 206.

*f*—Before any custom can be admitted into the law, it must appear that the usage has been general and uniform, the custom peaceably acquiesced in, and not subject to contention and dispute, and it must be certain; citing Broom, Leg. Max. (5th Am. ed.) *828.

Error to Wayne. (Brevoort, J.) Argued January 22, 1890. Decided April 11, 1890.

Case. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Marston, Cowles & Jerome*, for appellant, contended:

1. At common law, independent of statute, carriers by water and by land are on the same footing; citing *Ex parte Easton*, 95 U. S. 68, 75; *The Eddy*, 5 Wall. 481, 495; *McAndrew v. Whitlock*, 52 N. Y. 40; *Crosby v. Fitch*, 12 Conn. 410; *Hastings v. Pepper*, 11 Pick. 41; *McArthur v. Sears*, 21 Wend. 190; and carriers by sea and by inland waters are under the same obligation; citing *McAndrew v. Whitlock*, 52 N. Y. 40.

2. In this State a carrier's liability continues after the arrival of the goods until notice to the consignee, and a reasonable opportunity for their removal; citing *Buckley v. Railroad Co.*, 18 Mich. 121, 129–132; *Condon v. Railroad Co.*, 55 Id. 218; *Feige v. Railroad Co.*, 62 Id. 1, 4; and see *Redmond v. Steamboat Co.*, 46 N. Y. 578.

3. In this case, as to two of the consignments, no notice was given, and, as to the others, notice was given at 11 A. M. of Saturday, and the fire occurred at 1 A. M. of the following Monday.

4. As to what is reasonable notice and time, counsel cited *McMillan v. Railroad Co.*, 16 Mich. 79, 122, where two hours and a half was held insufficient, and *McAndrew v. Whitlock*, 52 N. Y. 40, where it is held that it is such as gives the consignee time enough under all proper and ordinary circumstances, and

proceeding in the ordinary mode of those engaged in the same kind of business, to provide for the care and removal of the goods.

5. Defendants contend that the custom of closing down on Saturday afternoons cannot affect their rights. But usage as to the manner of doing business enters into a contract as a part of it, in the absence of any express contract covering that point; citing *Darling v. Railroad Co.*, 11 Allen, 295; *Loveland v. Burke*, 120 Mass. 139, 142; 2 Pars. Cont. 187 (note); and the custom here was uniform, certain, and reasonable, and so binding; citing *Strong v. Railroad Co.*, 15 Mich. 206, 220; *Ledyard v. Hibbard*, 48 Id. 421; *VanHolsen v. Cameron,* 54 Id. 609.

6. Defendants also contend that when the goods were placed in the warehouse they ceased to be common carriers; citing 4 Term Rep. 582, 5 Id. 397, 400, which cases have been overruled in *Railroad Co. v. Manfg. Co.*, 16 Wall. 318; *Condon v. Railroad Co.*, 55 Mich. 218, and *McAndrew v. Whitlock*, 52 N. Y. 40, 52.

*S. S. Babcock*, for defendants, contended for the doctrine stated in the opinion.

LONG, J. The defendants Walter O. Ashley and John P. Clark were partners in business, and owned the steamer Alaska, which they used in domestic commerce on the lakes between Sandusky, Ohio, and Detroit, this State. After this action was commenced John P. Clark died, and the cause was revived against Samuel S. Babcock, Charles Clark, and Everett N. Clark, his executors.

It appears that Freund Bros., Burnham, Stoepel & Co., and the Black Hardware Company were severally consignees of certain invoices of goods brought by the steamer Alaska from the city of Sandusky to Detroit in July, 1887, and deposited in the warehouse of Ashley & Mitchell. The warehouse and all the goods were destroyed by fire occurring a little after midnight on August 1, 1887. The parties all assigned their claims to Clarence A. Black, the plaintiff, for the purpose of bringing this suit. The parties, being in court ready for trial, in open court consented that the jury impaneled be discharged,

and that the trial proceed before the court without a jury. After the trial the court made the following findings of fact:

"1. That on July 30, 1887, Freund Bros., of Detroit, purchased from George P. Benjamin, of New York, certain goods, of the value of $298.55; that on July 26, 1887, Burnham, Stoepel & Co., of Detroit, purchased from Wise Bros., of Baltimore, Md., goods of the value of $168; that on July 25, 1887, the Black Hardware Company, of Detroit, purchased from W. D. Wood & Co., of Pittsburgh, Penn., certain sheet iron, of the value of $474.32; that on July 27, 1887, said Black Hardware Company purchased from the Sandusky Tool Company, of Sandusky, Ohio, carpenters' planes, of the value of $117.96; that it is alleged in the declaration how goods were shipped, but there was no evidence introduced tending to show, and I am therefore unable to find, by what mode of conveyance the goods purchased in New York, Baltimore, and Pittsburgh reached Sandusky, Ohio.

"2. That the goods so purchased in New York, Baltimore, and Pittsburgh were received by the steamer Alaska at Sandusky, Ohio, for carriage to Detroit, on July 29 and 30, 1887, and bills of lading given by said steamer Alaska therefor, in the words and figures following:

"' BALTIMORE & OHIO RAILROAD.
"' (Lake Erie Division.)
"' Slip No. 161.

SANDUSKY, O., July 30, 1887.

"' Shipped by Baltimore & Ohio Railroad (Lake Erie Division), in good order and condition, on board the steamer Alaska,—Fox, master,—the following articles, marked and consigned as per margin, to be delivered in like order and condition (the dangers of fire, collision, and navigation only excepted), as addressed in the margin, subject to freight and charges as below. All property on deck at the risk of the vessel and owners.'

"Then followed on such receipt the name and residence of consignees, description of goods, and rate of freight.

"3. That the goods purchased of the Sandusky Tool Company were on July 29, 1887, taken by the said company to the wharf of the I., B. & W. Railway Company, in Sandusky, the said wharf being the place where the steamer Alaska stopped at Sandusky to receive freight consigned to Detroit; that C. B. Lockwood, the

agent of said railway company, received and receipted for freight for the steamer Alaska, using one of the printed bills of lading of the I., B. & W. Railway Company, containing a clause exempting carrier from loss by fire, which was the invariable custom, but there was no evidence tending to show, and I cannot therefore find, that the Sandusky Tool Company or the consignees saw said bill of lading, or assented to its terms, but the evidence did show they were acquainted with the bill of lading uniformly used by the Alaska when receiving shipments from the Sandusky Tool Company which were similar to these; that in said bill of lading the goods were designated as 'handles;' that said C. B. Lockwood had been acting as agent for said I., B. & W. Ry. Co. at Sandusky since 1874, and receipting as above for the steamer Alaska during the same period; that, acting in such capacities, he knew that the Sandusky Tool Company, during all of said years from 1874, shipped all goods manufactured and sold by it, which included carpenters' planes, as handles, excepting picks and hoes; that the rate would have been the same if the goods in question had been shipped as planes, the iron and steel in a plane being of no greater value and not so bulky or heavy as the wood.

"4. That at the time of such shipments, and for a long time prior thereto, said steamer Alaska was owned by John P. Clark and Walter O. Ashley, who were engaged and acting as common carriers of freight and passengers, using said boat for such purpose, between Sandusky, and certain other points in the state of Ohio, and Detroit, in the State of Michigan; that as such common carriers they received all of said goods on board said steamer at Sandusky to be carried to Detroit for the consignees; that said goods were carried as aforesaid, and the goods consigned to the Black Hardware Company reached Detroit about midnight of Friday, July 29, 1887, and were at once, in accordance with the usual and uniform custom, turned over to Ashley & Mitchell, a firm composed of the said Walter O. Ashley and Mitchell, and by them placed in their warehouse; that the goods consigned to Freund Bros. and to Burnham, Stoepel & Co. reached Detroit about midnight of Saturday, July 30, 1887, and were in like manner placed in said warehouse, and that said warehouse was a reasonably safe and proper place in which to place said goods.

"5. That it was the custom and practice of said Ashley & Mitchell to notify consignees of the arrival of goods in their warehouse from said steamer, and that no other notice had ever been given to consignees; that on Saturday, July 30, 1887, notice was sent by said Ashley & Mitchell to said Black Hardware Company, and received at 11 A. M., of the arrival of the goods consigned to said firm; that in July, 1887, and for a number of years previous thereto, it had been the uniform custom of all wholesale merchants in the city of Detroit to close their places of business during each summer season, commencing in 1885 at four o'clock in the afternoon, in 1886 at three o'clock, and in 1887 at one o'clock in the afternoon of Saturday in each week, and not to receive any freight or transact any business after that hour, which custom was well known; that said Black Hardware Company was engaged in the business of wholesale dealers in hardware during the year 1887; that owing to the fact that said goods consigned to Freund Bros. and Burnham, Stoepel & Co. arrived late on Saturday night, July 30, no notice was sent to the consignees of their arrival; that each of the said firms represented in said cause had been in the habit of receiving goods shipped by steamer Alaska, and had never received any notice of the arrival thereof from the owners of said Alaska, but always received notice from said Ashley & Mitchell.

"6. That about one o'clock on Monday morning, August 1, 1887, the said warehouse of Ashley & Mitchell caught fire, through no fault or carelessness of the owners thereof, and the said goods were totally destroyed.

"7. That said Freund Bros., Burnham, Stoepel & Co., and the Black Hardware Company severally assigned their respective claims against the owners of said steamer Alaska for the value of said goods so destroyed by fire to Clarence A. Black, plaintiff herein, which said assignments were made prior to the commencement of this suit."

Upon these facts the circuit court of Wayne county directed judgment for the defendants. Plaintiff brings error.

The plaintiff contends:

1. That the liability of the defendants as common carriers continued after the arrival of the goods, and their

deposit in the warehouse of Ashley & Mitchell, until notice to the consignees, and a reasonable time thereafter to remove them.

2. That the notice to the Black Hardware Company, given at 11 o'clock on Saturday, did not give that firm reasonable time thereafter to remove their goods on that day, as they were accustomed to close at 1 o'clock on Saturday, which custom was well known.

3. That the contract of carriage, limiting the common-law liability of the defendants as to the "dangers of fire and collision," applied only to fires happening on shipboard, and not to fires happening on the wharf or in a warehouse after unloading.

It is claimed, therefore, that the plaintiff is entitled to recover for the value of the whole goods by reason:

1. As to the Black Hardware Company's goods, they did not have reasonable time to remove the goods after notice from Ashley & Mitchell; and—

2. As to the balance, no notice at all was given.

By the general doctrine of the common law, a common carrier is responsible on the implied contract for all loss of, or injury to, goods received for carriage, except in case of loss caused by the act of God or the public enemy or the fault of the owner. The common carrier may in all cases expressly stipulate with the owner not to be liable for goods carried beyond the proper point for transferring to another carrier; or, in other words, limit his liability for loss to his own line (*Railroad Co. v. Bank,* 20 Wis. 122; *Irwin v. Railroad Co.,* 59 N. Y. 653); or he may by a special contract extend his liability, and agree to deliver the goods safely to the consignee at the place of destination (*Railroad Co. v. Pratt,* 22 Wall. 124; *Noyes v. Railroad Co.,* 27 Vt. 110). It is now generally conceded that a carrier may by contract limit his common-law liability as a common carrier.

The law has been settled in this State that, in the absence of an express contract, or a contract fairly infer-

able from the nature of the business, the known necessities under which it was carried on, the established usage upon the subject, and the like, the carrier can not excuse itself from responsibility as such carrier by depositing its goods in its warehouse at the end of its route. *Buckley v. Railway Co.*, 18 Mich. 121; *Feige v. Railroad Co.*, 62 Id. 1 (28 N W. Rep. 685).

The contract of carriage in the present case is as follows:

"Shipped by Baltimore & Ohio Railroad (Lake Erie Division), in good order and condition, on board the steamer Alaska,—Fox, master,—the following articles, marked and consigned as per margin, to be delivered in like order and condition (the dangers of fire, collision, and navigation only excepted) as addressed in the margin, subject to freight and charges as below. All property on deck at the risk of the vessel and owners."

Then followed on such receipt the name and residence of consignees, description of goods, and rate of freight.

This was a contract, therefore, to transport the goods from Sandusky, Ohio, to Detroit, and deliver them to the consignees, and the common-law liability of the defendants, as insurers, was in no way limited by the contract itself, except as to dangers of fire, collision, and navigation. It is claimed by defendants that this limitation as to fire falls within the exemption contained in section 4282 of the Revised Statutes of the United States, which provides:

"No owner of any vessel shall be liable to answer for or make good to any person any loss or damage which may happen to any merchandise whatsoever, which shall be shipped, taken in, or put on board any such vessel, by reason or by means of any fire happening to or on board the vessel, unless such fire is caused by the design or neglect of such owner."

The express language of this act, it will be noticed, limits its application to fires happening on ship-board; and, as said by Brown, J., in the case of *The Egypt*, 25 Fed. Rep. 320, the design of the statute was "to give relief against the consequences of fires incident to navigation." Here the loss occurred by fire, after the goods were unloaded and placed in the warehouse of third parties. The act and the contract limiting liability had no reference to such a loss.

By the terms of the contract, therefore, the defendants agreed to deliver the goods to the consignees at Detroit in as good order as when taken. But the court below found, and that finding is conclusive upon us, that a custom had existed for a number of years, and which was well known to the consignees, and in which they had for a long time acquiesced, for the Alaska to unload its goods, and store them in the warehouse of Ashley & Mitchell, a firm entirely independent of the Alaska, and who were accustomed to give notice of the arrival of such goods to the various consignees, and that such consignees were accustomed to receive their goods directly from Ashley & Mitchell, and not from the Alaska.

The obligation of the carrier is not generally discharged until he properly delivers the goods he undertakes to deliver to the consignee or other person according to the terms of the contract. The particular mode of delivery, or what may constitute a delivery, may depend, however, upon various circumstances. As a general rule, by usage and common custom, railroad carriers may deliver freight at their depots, freight-houses, or stations, and be relieved of the burden of actual delivery at the place of business of the consignee, and be also relieved of their common-law liabilities as common carriers, by notice to the consignee, and reasonable time thereafter to remove them. And persons delivering them goods to carry are supposed,

in the absence of special contract, to understand such common usage or custom, and to contract with reference to it. *Strong v. Railroad Co.*, 15 Mich. 206.

Before any custom can be admitted into the law, it must appear that the usage has been general and uniform, the custom peaceably acquiesced in, and not subject to contention and dispute, and it must be certain. Broom, Leg. Max. (5th Amer. ed.) * 828. Here the facts are not in any manner in controversy that the defendants were accustomed to leave all freight transported by the Alaska with Ashley & Mitchell, and they gave the notice to the consignees. The consignees in the present case had for a long time acquiesced in the arrangement. Under such circumstances, it cannot be said that the defendants regarded their liability as common carriers as continuing until Ashley & Mitchell had given the notice to the consignees, and a reasonable time thereafter had elapsed to remove the goods. The contract of carriage must be construed in the light of the surrounding circumstances, and the custom which prevailed of depositing the goods with third parties, from whom the consignees not only received the notice, but to whom they receipted; and in this view of the case the liability of the defendants as common carriers ended when they had safely deposited the goods with Ashley & Mitchell. It cannot matter, so far as the rights of the defendants are concerned, that Ashley & Mitchell may not be holden to any greater liability than that of warehousemen. The consignees had assented by custom to receive the goods in this manner, and the delivery to Ashley & Mitchell in as good condition as when taken relieved the defendants from any further responsibility under the circumstances.

If Ashley & Mitchell had been an intermediate carrier, and there was nothing appearing in the contract of

carriage by which the defendants as first carriers were holden as insurers to the end of the route, then, under well-settled rules, the defendants would have been relieved of all liability by a safe delivery to Ashley & Mitchell. *Rickerson Roller-mill Co. v. Railroad Co.*, 67 Mich. 110 (34 N. W. Rep. 269); *Detroit & Bay City Ry. Co. v. McKenzie*, 43 Id. 609 (5 N. W. Rep. 1031); *Pratt v. Railroad Co.*, 95 U. S. 43. In the present case, by a custom long acquiesced in, the defendants made the delivery to Ashley & Mitchell on the arrival of the Alaska in Detroit, and could no longer be held liable for safe-keeping. In this view of the case it is unnecessary to discuss the other questions raised.

The judgment must be affirmed, with costs.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred.